## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Allonhill LLC, | Case No.: 14-10663 (KG) |
| Debtor. | **Related D.I.: 545, 547, 551, 557, 558, 573, 576, 578** |

## ORDER CONFIRMING THIRD AMENDED PLAN OF REORGANIZATION OF ALLONHILL, LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

On November 3, 2015, the Court held a hearing (the **"Confirmation Hearing"**) on confirmation of the *Third Amended Plan of Reorganization for Allonhill, LLC Under Chapter 11 of the Bankruptcy Code* [D.I. 551] (as subsequently amended, modified, or supplemented, the **"Plan"**), filed by the above-captioned debtor and debtor-in-possession (the **"Debtor"**) and incorporated by reference herein. On November 3, 2015, the Court also entered the *Order Granting Debtor's Motion Pursuant to Bankruptcy Code sections 105(a), 1125 and 1126, Bankruptcy Rules 2002, 3003, 3017, 3018, and 3020, and local rule 3018-1, for Entry of an Order (I) Approving the Disclosure Statement, (II) Establishing Solicitation, Voting, and Tabulation Procedures, (III) Appointing a Voting Agent, (IV) Scheduling a Confirmation Hearing and Approving Forms of Notices and Ballots* [D.I. 545] (the **"Disclosure Statement Order"**).

The Court has reviewed and considered the Plan, *the Disclosure Statement in Support of the Third Amended Plan of Reorganization of Allonhill, LLC* [D.I. 547] (the **"Disclosure Statement"**), the Plan Supplement [D.I. 573], the affidavits of service filed in respect thereof dated November 5, November 6, 2015, November 12, 2015 and December 7, 2015 [D.I. 557, 557, 576] (together, the **"Notice Affidavits"**), the *Debtor's Memorandum of Law in Support of*

*Confirmation of the Third Amended Plan of Reorganization of Allonhill, LLC Under Chapter 11 of the Bankruptcy Code* (the "**Confirmation Memo of Law**") and the *Declaration of Margaret Sue Allon in Support of Confirmation of the Third Amended Plan of Reorganization of Allonhill, LLC,* attached as Exhibit 1 to the Confirmation Memo of Law (the "**Allon Declaration**") filed contemporaneously herewith, the *Certification of Upshot Services, LLC Regarding the Tabulation of Votes in Connection With the Third Amended Chapter 11 Plan of Reorganization for Allonhill, LLC* [D.I. 578] (the "**Voting Declaration**"), *the Objection to confirmation of the Plan filed by Stewart Lender Services, Inc.* [D.I. 575] (the "**Objection**"), and the *Stipulation Between the Debtor and Stewart Lender Services, Inc. Resolving Objection (the "Objection") [D.I. 575] to the Third Amended Chapter 11 Plan of Reorganization of Allonhill, LLC [D.I. 551]* attached hereto as **Exhibit 1** (the "**Stipulation**"), together with other documents comprising the record in the Debtor's Chapter 11 Case, the arguments and representations of counsel, and the evidence proffered and/or adduced at or prior to the Confirmation Hearing. Based upon that review and upon consideration thereof, and after due deliberation thereon, the Court makes and issues the following findings of fact, conclusions of law and Order:[1]

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.    Venue: Core Proceeding: Exclusive Jurisdiction. On the Petition Date, the Debtor commenced the chapter 11 case (the "**Chapter 11 Case**") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor was qualified and is qualified to be a debtor under Bankruptcy Code section 109(d). Venue was proper as of the Petition Date and continues to be proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation

---

[1] This Order constitutes this Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, as made applicable by Bankruptcy Rule 7052 and 9014. Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052. Capitalized terms used but not defined otherwise defined herein shall have the meaning ascribed to them in the Plan.

{BAY:02829573v1}

\\NY - 019757/000017 - 4623934 v7

of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2). The Court has jurisdiction over the Case pursuant to 28 U.S.C. §§ 157 and 1334, and the Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.    Judicial Notice. The Court takes judicial notice of the docket in the Chapter 11 Case maintained by Clerk of the Court and/or its duly-appointed agent, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before the Court during the Chapter 11 Case, including the hearing to consider the adequacy of the Disclosure Statement and the Confirmation Hearing.

C.    Burden of Proof. The Debtor, as proponent of the Plan, has the burden of proving the elements under Bankruptcy Code section 1129(a) and (b) by a preponderance of the evidence, and it has met that burden as stated by the Court on the record at the Confirmation Hearing and as further found and determined herein.

D.    Solicitation and Notice. As evidenced by the Notice Affidavits, the Voting Declaration, and as required by the Disclosure Statement Order, the Debtor has provided notice of the Confirmation Hearing and solicited ballots accepting or rejecting the Plan by timely transmitting the Disclosure Statement Order, the Disclosure Statement, the Plan, the Confirmation Hearing Notice, and, as appropriate, Ballots to accept or reject the Plan, and notices of non-voting status (collectively, the **"Solicitation Package"**) to holders of Claims and Equity Interests, in accordance with the Disclosure Statement Order, the Federal Rules of Bankruptcy Procedure and the Bankruptcy Code. The notice given of the Confirmation Hearing was adequate and sufficient and no other notice need be given.

E.    <u>Good Faith Solicitation.</u> Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with the Bankruptcy Code (including Bankruptcy Code sections 1126 and 1129), the Bankruptcy Rules (including Bankruptcy Rules 3017 and 3018), the Disclosure Statement Order, and all other applicable statutes, rules, laws and regulations. Based on the record in the Chapter 11 Case, the Debtor has acted in "good faith" and in compliance with the applicable provisions of the Bankruptcy Code, within the meaning of Bankruptcy Code section 1125(e), is entitled to the protections thereof, and is entitled to the protections contained in Article XI of the Plan, which are reasonable and appropriate under the circumstances.

F.    <u>Acceptances of the Plan.</u> As evidenced by the Voting Declaration, pursuant to Bankruptcy Code sections 1124 and 1126, Classes 3, 4 and 5, which are the only Classes entitled to vote on the Plan, have accepted the Plan. Class 4 is deemed to have accepted the Plan, because this Class is comprised of insiders of the Debtor.

G.    <u>Rejection of Executory Contracts and Unexpired Leases.</u> The provisions of Article VI of the Plan governing the rejection of executory contacts and unexpired leases satisfy the requirements of all applicable provisions of Bankruptcy Code section 365. Each rejection of an executory contract or unexpired lease under the Plan shall be legal, valid and binding upon the Debtor, the Reorganized Debtor and all non-Debtor parties to such executory contract or unexpired lease, all to the same extent as if the rejection had been effectuated by motion.

H.    <u>Satisfaction of Confirmation Requirements.</u> The Plan satisfies the requirements for confirmation set forth in Bankruptcy Code Sections 1129(a) and (b), as set forth below:

a.    <u>11 U.S.C. § 1129(a)(1):</u> The Plan complies with all applicable provisions of the Bankruptcy Code, including Bankruptcy Code sections 1122 and 1123.

i.      11 U.S.C. § 1122. Each Claim or Equity Interest placed in a particular Class under the Plan is substantially similar to the other claims or interests in that Class. In addition, valid business, legal and factual reasons exist for the separate classification of each of the classes of Claims and Equity Interests created under the Plan, and there is no unfair discrimination between or among holders of Claims and Interests.

ii.     11 U.S.C. § 1123. Article III of the Plan classifies Claims and Equity Interests into five different Classes (except for Administrative Claims, Professional Fee Claims, U.S. Trustee Fees, and Priority Tax Claims, which are not classified), specifies which Claims or Equity Interests are Impaired and Unimpaired, provides the same treatment for Claims and Equity Interests within each Class (except to the extent agreed to by the Holder of a Claim), and provides adequate means for the Plan's implementation. 11 U.S.C. §1123(a)(1)-(5). The Plan does not propose the issuance of equity or other securities; accordingly, the prohibition on issuance of nonvoting securities is inapplicable. 11 U.S.C. §1123(a)(6). The provisions of the Plan providing for the reorganization of the Debtor as the Reorganized Debtor, the creation of the Disbursement Account and the appointment of Mr. Giuliano as Disbursing Agent are consistent with the interests of Creditors and public policy. 11 U.S.C. §1123(a)(7). The Plan contains other permissive provisions, which are appropriate pursuant to Bankruptcy Code section 1123(b) and not inconsistent with the Bankruptcy Code.

b.      11 U.S.C. § 1129(a)(2): The Debtor has complied with all of the Bankruptcy Code's applicable provisions, including conducting the solicitation of

acceptances and rejections of the Plan in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order.

c.        11 U.S.C. § 1129(a)(3): The Debtor has proposed the Plan in good faith and not by any means forbidden by law. Among other things, the Plan and the agreements implemented by the Plan are all the result of extensive, arm's-length, good faith negotiations between and among the principal constituencies in the Chapter 11 Case, with the objective of ensuring that economic stakeholders of the Debtor's Estate realize the best possible recovery under the circumstances.

d.        11 U.S.C. § 1129(a)(4): The Plan appropriately provides for all payments for services in connection with the Chapter 11 Case to be subject to Court approval as reasonable and therefore satisfies Bankruptcy Code section 1129(a)(4).

e.        11 U.S.C. § 1129(a)(5): The Plan and Disclosure Statement comply with Bankruptcy Code section 1129(a)(5) by virtue of the disclosure in the record of the Chapter 11 Case of the identity and affiliation of the individuals proposed to serve, after confirmation of the Plan, as Manager of the Reorganized Debtor and the Disbursing Agent. As noted, the appointment of both Ms. Allon as manager and Mr. Giuliano as Disbursing Agent are consistent with the interests of Creditors and public policy.

f.        11 U.S.C. § 1129(a)(6): The requirements of Bankruptcy Code section 1129(a)(6) are not applicable to the Plan because the Debtor is not subject to any regulatory commission with jurisdiction over the rates, and because the Debtor has no operations and its assets are ultimately being liquidated.

g.        11 U.S.C. § 1129(a)(7): Each Holder of Claim or Equity Interest in a Class that is Impaired under the Plan either: (a) has accepted the Plan; or (b) will receive or

retain under the Plan property of a value, as of the Effective Date, that is not less than that Person or Entity would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. The members of Classes 3, 4 and 5, which Classes are Impaired under the Plan, have accepted (or in the case of Class 4, is deemed to accept) the Plan.

      h.     <u>11 U.S.C. § 1129(a)(8)/ 11 U.S.C. § 1129(b):</u>

          i.     Classes 3 and 5 are Impaired under the Plan and have voted to accept the Plan.

          ii.     Class 4 is impaired and deemed to accept the Plan.

          iii.     Confirmation of the Plan is appropriate because the Plan provides that holders of Allowed Secured Claims receive the Debtor's right, title or interest to the Assets securing such Secured Claims. The treatment of Class 2 satisfies the requirements of Bankruptcy Code section 1129(b)(2); such treatment does not discriminate unfairly and is fair and equitable within the meaning of Bankruptcy Code section 1129(b)(2)(A).

      i.     <u>11 U.S.C. § 1129(a)(9):</u> The treatment of Administrative Claims and Priority Tax Claims under the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(9). The Plan requires that all such Claims will be paid in full, except to the extent the holders of such Claims have agreed otherwise pursuant to Article III of the Plan.

      j.     <u>11 U.S.C. § 1129(a)(10):</u> Class 3, which is Impaired and entitled to vote on the Plan, has voted to accept the Plan. The Plan therefore satisfies the requirements of Bankruptcy Code section 1129(a)(10).

      k.     <u>11 U.S.C. § 1129(a)(11):</u> The Plan is feasible and therefore satisfies the requirements of Bankruptcy Code section 1129(a)(11). The Plan provides for (i) creation

of the Reorganized Debtor, (ii) preservation of the Debtor's Causes of Action; (iii) for those preserved Causes of Action to be re-vested in the Reorganized Debtor, (iv) authorization to the Reorganized Debtor to pursue the re-vested Causes of Action in order to liquidate the Debtor's remaining assets, (v) the establishment of the Disbursement Account; (vi) appointment of the Disbursing Agent; (vii) authorization to the Disbursing Agent to oversee disbursements in accordance with the Disbursement Procedures; and (viii) a mechanism to distribute the proceeds to the holders of Allowed Claims.

l.       11 U.S.C. § 1129(a)(12): The Plan provides for payment in full of all Allowed Administrative Claims, which may include U.S. Trustee Fees arising under 28 U.S.C. § 1930. The Plan thus satisfies the requirements of Bankruptcy Code section 1129(a)(12).

m.       11 U.S.C. § 1129(a)(13): The Debtor has no obligations to provide any retiree benefits, and accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Plan.

n.       11 U.S.C. § 1129(a)(14) and (15): These statutes apply only to individual debtors and thus are inapplicable to confirmation of the Plan.

o.       11 U.S.C. § 1129(a)(16): The requirements of Bankruptcy Code section 1129(a)(16) are not applicable to confirmation of the Plan because the Debtor is not a nonprofit entity or trust.

p.       11 U.S.C. § 1129(c): Other than the Plan (including previous versions thereof), no other plan has been filed in the Chapter 11 Case.

q. <u>11 U.S.C. § 1129(d)</u>: The requirements of Bankruptcy Code section 1129(d) are satisfied because the principal purpose of the Plan <u>is</u> not the avoidance of taxes.

I. <u>Good Faith Solicitation:</u> The Debtor has solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with <u>such</u> solicitation. Specifically, the Debtor and its representatives have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order in connection with all activities relating to the solicitation of acceptances or rejections of the Plan; and therefore shall not be liable, at any time, for any violation of any applicable law, rule, or regulation, governing solicitation of acceptances or rejections of the Plan and are entitled to the protections afforded by section 1125(e).

J. <u>Disbursement Procedures.</u> The establishment of the Disbursement Account, appointment of the Disbursing Agent, and transfer of title to the Estate's Assets to the Reorganized Debtor, subject to the Disbursement Procedures, are essential elements of the Plan, and are in the best interests of the Debtor, the Estate, and the Holders of Claims and Interests. The establishment of the Disbursement Procedures and the selection of Mr. Giuliano to serve as Disbursing Agent, are appropriate and in the best interests of the beneficiaries of the Disbursement Account. The Disbursement Procedures, shall, upon confirmation of the Plan, be valid, binding and enforceable in accordance with the terms of the Plan. The vesting in the

Disbursement Account of the Estate's Assets in accordance with the Disbursement Procedures and the continuing obligation of the Reorganized Debtor, as specified in the Plan, to deliver proceeds realized from the Causes of Action to the Disbursement Account are material components of the Plan.

K.    Preservation of Causes of Action, including Litigation Rights and Avoidance Actions. It is in the best interests of the Debtor's Estate and its Creditors that rights of action, including the Causes of Action (which includes Litigation Rights and Avoidance Actions), as provided for and preserved by in Article V of the Plan, that are not expressly released under the Plan be retained by, and transferred to, the Reorganized Debtor, and as specified in the Plan, and they are so retained and transferred.

L.    Retention of Jurisdiction. The Court may properly retain jurisdiction over the matters set forth in Article X of the Plan.

M.    Releases and Related Provisions. The release, exculpation, and injunction provisions contained in Article XI of the Plan are, under the circumstances presented, fair, reasonable and necessary to the successful effectuation of the Plan.

## ORDER

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT HEREBY IS ORDERED:**

1.    Confirmation. The Plan, as modified by this Order, is approved and confirmed. All parties are directed to comply with the terms thereof. The terms of each of the documents in the Plan and all exhibits and addenda thereto (including without limitation the Plan Supplement, substantially in the form filed with the Court) are approved, incorporated by reference into, and an integral part of the Plan.

{BAY:02829573v1}

\\NY - 019757/000017 - 4623934 v7

2.      Objections Withdrawn or Overruled. The objections filed of record and any other objections raised at or before the Confirmation Hearing, which were not otherwise withdrawn or resolved herein, are overruled.

3.      Provisions of Plan and Order Nonseverable and Mutually Dependent. The provisions of the Plan and this Order, including the findings of fact and conclusions of law set forth herein, are non-severable and mutually dependent.

4.      Record Closed. The record of the Confirmation Hearing is closed.

5.      Notice. Good and sufficient notice of the Confirmation Hearing and the deadline for filing and serving objections to the Plan and confirmation thereof has been provided, which notice is hereby approved.

6.      Binding Effect and Validity. Pursuant to section 1141 of the Bankruptcy Code, the provisions of the Plan and this Order shall bind the Debtor, the Debtor's Estate, the Reorganized Debtor, the Disbursing Agent, and all holders of Claims against and Equity Interests in the Debtor, including their successors and assigns, whether or not the Claims or Interests of these Persons or Entities are Impaired under the Plan, whether or not these Persons or Entities have voted to accept or reject the Plan, and whether or not these Persons or Entities have filed proofs of Claim or proofs of Equity Interests in the Debtor's Chapter 11 Case. Except as may be otherwise provided in this Order, each Plan term and provision, as it may be interpreted in accordance with the Plan, is valid and enforceable in accordance with its terms.

7.      Appointment of Disbursing Agent. Alfred T. Giuliano is appointed Disbursement Agent under the Plan and in accordance with the terms of the Disbursement Procedures of the Plan.

8.    <u>Fees and Expenses of Disbursing Agent</u>. Any reasonable fees and expenses incurred by the Disbursing Agent arising before the Effective Date shall constitute an Allowed Administrative Claim; provided, that upon the occurrence of the Effective Date all such fees and expenses shall be paid from the Disbursement Account in accordance with the terms of the Disbursement Procedures.

9.    <u>Effectuation of the Plan.</u> The Debtor, the Reorganized Debtor, the Estate and the Disbursing Agent are authorized to execute and to deliver any and all documents and instruments and take any and all actions necessary or desirable to implement the Plan and this Order and to effect any other transactions contemplated hereby or thereby. To effectuate the Plan and such transactions, the officers or responsible representatives of the Debtor, if any, the Disbursing Agent, and subsequent to the Effective Date, the Reorganized Debtor, are authorized — without further notice or application to or order of the Court — to execute, deliver, file, or record such agreements, New Governance Documents, certificates of dissolution, tax returns or other documents, and to take such other actions as any such individual may determine to be necessary or desirable to effectuate the Plan and such transactions, regardless of whether such actions or documents are specifically referred to in the Plan or this Order. To the extent that, under applicable non-bankruptcy law, any of these actions otherwise would require the consent or approval of the manager or members of the Debtor, this Order constitutes such consent and approval. The Debtor, prior to the Effective Date, and the Reorganized Debtor, subsequent to the Effective Date, shall be authorized, to the extent necessary, without the need for any member consent or other consent, to act in any corporate capacity to undertake any corporate or corporate governance actions on behalf of the Debtor in the furtherance of the transfer to the Disbursement Account and liquidation of the Estate's Assets, including, with respect to the Reorganized Debtor,

acting with the authority of any officer, director or manager of the Debtor solely to effectuate such transfer to the Disbursement Account and such liquidation of the Estate's Assets through pursuit of Causes of Action or other necessary activities and, as necessary, to wind down the affairs of the Debtor.

10.     Dissolution of Debtor. The Reorganized Debtor, in accordance with the terms of the New Governance Documents may dissolve the Debtor at its discretion without the necessity for other or further actions to be taken by or on behalf of the Debtor; provided that in the sole discretion of the Manager of the Reorganized Debtor, the Reorganized Debtor, on behalf of the Debtor, may (but shall not be required to) file a certificate of dissolution or similar document with the Office of the Secretary of State for the applicable state.

11.     Re-vesting of Preserved Causes of Action. Pursuant to the Plan, the assets of the Debtor's Estate which constitute the Causes of Action (including Litigation Rights and Avoidance Actions) will be preserved and shall continue after the Effective Date as assets of the Reorganized Debtor. Except as otherwise provided in the Plan, the Plan Supplement, or this Order, or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, on the Effective Date, the preserved Causes of Action shall vest in the Reorganized Debtor, free and clear of all Claims, Interests, liens, encumbrances, and interests, as provided in Article VII of the Plan and shall be prosecuted, managed, controlled, and/or settled on behalf of the Estate by the Reorganized Debtor, subject to the Disbursement Procedures, as provided in the Plan and the Plan Supplement. The Reorganized Debtor and Disbursing Agent are authorized to take any action on behalf of the Debtor in the furtherance of the pursuit of Causes of Action and liquidation of the Estate's Assets, including in the case of the Reorganized Debtor taking any corporate action related thereto. The Reorganized Debtor is authorized to

perform such post-Effective Date acts as are required to effectively and finally wind up the affairs of the Debtor, including but not limited to, (i) preparing and filing final tax returns, (ii) paying final invoices of the Debtor, (iii) paying any post-petition Professional Fees after the allowance of final fee applications by this Court and post-Effective Date in accordance with the terms of the Plan, and (iv) filing for dissolution of the Debtor under state law (for avoidance of doubt, in the case of (ii) and (iii), subject to the Disbursement Procedures).

12.     <u>Disposition of Books and Records.</u> From and after the Effective Date, the Reorganized Debtor shall continue to preserve and maintain any documents and electronic data transferred to the Reorganized Debtor by the Debtor and the Reorganized Debtor shall not destroy or otherwise abandon any such documents or records (in electronic or paper format) absent further order of the Bankruptcy Court after a hearing upon appropriate notice to parties-in-interest under the rules of the Bankruptcy Court.

13.     Nothing in this Order shall: (i) alter the state of incorporation of the Debtor for purposes of determining the applicable law of any of the Causes of Action or Avoidance Actions, (ii) expand, alter or impair the legal and equitable rights of the Reorganized Debtor to enforce any of the Causes of Action, or (iii) otherwise impair, release, discharge, extinguish or affect any of the Causes of Action, or issues raised as a part thereof or in connection therewith.

14.     Nothing in the Plan shall affect any of the Debtor's or the Reorganized Debtor's obligations to pay any and all fees pursuant to section 1930 of Title 28 of the United States Code to the U. S. Trustee in each case as required by law until such time as the Chapter 11 Case is closed, dismissed or converted.

15.     <u>Treatment Is in Full Satisfaction.</u> The treatment set forth in the Plan is in full and complete satisfaction of the legal, contractual, and equitable rights (including any liens) that each

Person or Entity holding a Claim or an Interest may have with respect to such Claim or Interest in or against the Debtor's Estate, Assets of the Estate, the Reorganized Debtor, the Disbursing Agent, assets of the Disbursement Account, or its and/or their respective property. This treatment supersedes and replaces any agreements or rights that any Person or Entity may have in or against the Debtor, the Estate, the Reorganized Debtor, the Disbursing Agent, assets of the Disbursement Account, or their respective property.

16.     Approval of Stipulation. The terms of the Stipulation attached as **Exhibit 1** hereto, is approved and such Stipulation is embodied and incorporated into the Plan. Pursuant to the Stipulation, the following provisions of the Plan shall be amended to provide:

"**Section 1.38.** "**Direct Contractual Obligation**" means an obligation under a written and enforceable contract to take or to refrain from taking prospective action, other than to pay money, non-compliance with which would cause material damage or loss to the other contract party, or give rise to rights of indemnification under the contract, and for avoidance of doubt, shall include the obligations of the Debtor, the Debtor's Principals, and/or any Affiliate of the Debtor set forth in sections 6.1, 6.3 and 6.9 of Article VI of, and in Article IX of, the SLS APA."

**Section 1.105.** "**SLS**" means Stewart Lender Services, Inc., a company incorporated in Texas with its registered office at 1980 Post Oak Blvd., Ste. 800, Houston, Texas 77056.

**Section 5.08. Release of the SLS Escrow.**

In consideration of the Releases set forth in Section 11.10 hereof and in the Confirmation Order, the Plan and the Confirmation Order are deemed (i) to be an Aurora Resolution Event as defined by the SLS APA for purposes of section 1.3 of the *Escrow Agreement* dated as of August 28, 2013, by and among SLS, Allonhill, and the Escrow Agent (the "SLS Escrow Agreement") authorizing the Escrow Agent to disburse the SLS Escrow to the Disbursing Agent for deposit in the Disbursement Account, (ii) to resolve and release SLS from all "Aurora Claims" as defined by the *Indemnity Agreement*, dated August 28, 2013 between SLS and Allonhill (the "SLS Indemnity Agreement"), (iii) to release the Debtor from obligations relating to Aurora Claims under the SLS APA, the SLS Indemnity Agreement, and the SLS Escrow Agreement except as otherwise set forth in this Section 5.08 and (iv) to constitute, immediately prior to such Aurora Resolution Event, the delivery of (a) a "Claim Notice" by SLS under Section 3 of the SLS Indemnity Agreement to Allonhill, (b) a "Claim Notice" by SLS under Article VII of the SLS APA to Allonhill and (c) an "Escrow Agreement Claims Notice" by SLS of both an "Article VII Claim" and an "Aurora Claim" to Allonhill as well as an Escrow Agreement Claims Notice to

the Escrow Agent by both SLS and Allonhill. SLS further agrees to the termination of SLS's rights under the SLS APA, the SLS Escrow Agreement, and the Indemnity Agreement and any other indemnification agreements between SLS and Allonhill to be indemnified for Aurora Claims (as defined in the SLS Indemnity Agreement) or any other indemnified Losses (as defined in the SLS Indemnity Agreement), other than Losses (a) that (x) are defined by part (ii) of the definition of "Aurora Losses" in Section 1(b) of the SLS Indemnity Agreement as incurred, resulting or arising from the "Excluded Litigation", or (y) result from a breach of section 4.17 of the SLS APA and (b) that are entitled to indemnification pursuant to the SLS Indemnity Agreement and/or the SLS APA. The Confirmation Order shall constitute a direction to the Escrow Agent to deliver the funds held in the SLS Escrow to the Disbursing Agent for deposit to the Disbursement Account. On the Effective Date, all of the Debtor's right, title and interest in and to the funds received from the release of the SLS Escrow shall automatically be vested in the Reorganized Debtor, provided, however, (and the Confirmation Order shall so provide) that in the event SLS establishes in a proceeding before the Bankruptcy Court that it is a Holder of an Allowed Claim for Losses that (x) are defined by part (ii) of the definition of "Aurora Losses" in Section 1(b) of the SLS Indemnity Agreement as incurred, resulting or arising from the "Excluded Litigation", or (y) result from breach of section 4.17 of the SLS APA and (b) that would be subject to indemnification pursuant to the terms of the SLS Indemnity Agreement and/or the SLS APA, such Allowed Claim shall be treated by the Plan as an Allowed Secured Claim up to the value of the SLS Escrow as of the date of delivery thereof by the Escrow Agent to the Disbursing Agent. Following the Effective Date, the Disbursing Agent will hold the SLS Escrow delivered to it and segregate the SLS Escrow from its other funds until such proceeding to determine whether SLS is a Holder of an Allowed Secured Claim for such Losses is (i) either resolved pursuant to a final and non-appealable order entered by the Bankruptcy Court or (ii) SLS and the Debtor settle the proceeding pursuant to a compromise and settlement agreed to by both parties; and further provided that, for avoidance of doubt, that the releases described herein shall not constitute a release by Aurora or the Debtor of each other with respect to the Aurora Litigation.

### Section 9.01 Conditions to Confirmation

The following conditions precedent to the occurrence of the Confirmation Date must be satisfied unless any such condition shall have been waived by the Debtor:

(a) The Confirmation Order shall have been entered in form and substance satisfactory to the Debtor, and shall, among other things:

(i)    provide that the Debtor and the Reorganized Debtor are authorized and directed to take all actions necessary or appropriate to enter into, implement, and consummate the Plan and all related contracts, instruments, releases, leases, indentures and other agreements or documents created in connection with the Plan or necessary to implement the Plan;

(ii)    authorize the issuance of the New Common LLC Interests;

(iii) deem the releases in favor of SLS by Aurora pursuant to Section 11.10 to be an Aurora Resolution Event, as defined by the SLS APA, and direct the Escrow Agent to release

all funds held in the SLS Escrow to <u>the Disbursing Agent, subject to and in accordance with the</u> <u>terms of Section 5.08 hereof</u>; and ...


### Section 9.02. Conditions to the Effective Date

The following conditions precedent to the occurrence of the Effective Date must be satisfied or waived by the Debtor on or prior to the Effective Date in accordance with Section 9.04 of the Plan:

(a) Each of the exhibits to the Plan and any other necessary documents shall be fully executed and delivered to the Debtor, shall be in form and substance reasonably acceptable to the Debtor, and shall be fully enforceable in accordance with their terms;

(b) The Disbursing Agent shall have accepted appointment pursuant to the Confirmation Order; and

(c) The Escrow Agent shall have released all funds in SLS Escrow to <u>the Disbursing</u> <u>Agent, subject to and in accordance with the terms of Section 5.08 hereof.</u>


### Section 11.10 Releases and Related Matters

**(b) Releases by Holders of Claims of their Claims against the Debtor, the Debtor's Principals, the Reorganized Debtor and Other Holders of Claims or Interests.**

As of the Effective Date, for good and valuable consideration, and to the extent permitted under Delaware law, Holders of Claims and Interests that (i) have held, currently hold or may hold a Released Claim or any Released Third Party Cause of Action (each as defined herein), (ii) is entitled to receive, directly or indirectly, a distribution in satisfaction of its Claim or Equity Interest pursuant to the Plan, and (iii) elects, by not checking or by checking the appropriate box on its Ballot or election form, as the case may be , to grant the releases set forth in this section 11.10(b), on their own behalf and on behalf of anyone claiming through them, shall be deemed to have and hereby does conclusively, absolutely, unconditionally, irrevocably and forever release and discharge the Debtor, Debtor's Principals, the Reorganized Debtor, other Holders of Claims or Interests (except such other Holders of Claims owing obligations under policies of insurance issued to the Debtor or the Estate) and the directors, officers, employees or advisors of the Debtor as of the Petition Date and through the Effective Date (the "Third Party Releasees"), from Third Party Released Claims; provided, however, that nothing in this Section 11.10(b) shall be deemed to prohibit any party from asserting or enforcing any Direct Contractual Obligation against any Releasee or Third Party Releasee, with all rights and defenses to such claims based on Direct Contractual Obligations being reserved by the Releasees or Third Party Releasee; and further, provided however, that each person or entity that has elected not to grant the releases set forth in this section 11.10(b) shall not be entitled to, and shall not receive, any payment, distribution or other satisfaction of its claim pursuant to the Plan. THE FOREGOING RELEASE IN FAVOR OF ANY RELEASEE IS CONDITIONED UPON AND IN CONSIDERATION OF

{BAY:02829573v1}

\\NY - 019757/000017 - 4623934 v7

SUCH ENTITIES' WRITTEN AGREEMENT TO BE BOUND TO THE TERMS OF THIS PLAN, INCLUDING WITHOUT LIMITATION THEIR AGREEMENT TO COMPLY WITH THE PROVISIONS OF SECTIONS 5 AND 11.12 OF THIS PLAN, AND IN THE CASE OF THE DEBTOR'S PRINCIPALS THE MAKING OF THE CONTRIBUTION, AND TO SUBJECT THEMSELVES TO THE JURISDICTION OF THE BANKRUPTCY COURT FOR PURPOSES OF ENFORCEMENT OF THE TERMS OF THIS PLAN, AS SET FORTH IN THE ACKNOWLEDGEMENT AGREEMENT TO BE DELIVERED AS PART OF THE PLAN SUPPLEMENT. For the avoidance of doubt, nothing herein constitutes or shall constitute: (i) a waiver, release, or discharge by Aurora of the Debtor or compromise by Aurora of rights against the Debtor with respect to the Aurora Litigation; (ii) a waiver or alteration of any of the rights and obligations of XL Specialty or the insureds under the XL Specialty Policy, all of which are reserved as specified above in Section 3.04(b); or (iii) a waiver, release or discharge by SLS (or an Affiliate) of any rights under the SLS APA, the SLS Escrow Agreement, the Indemnity Agreement, and related documents that are expressly preserved in Section 5.08 hereof,

### Section 11.12 Discharge of Claims

In accordance with section 1141(d)(3) of the Bankruptcy Code, Confirmation will not discharge Claims against and Interests in the Debtor; provided, however, that no Holder of a Claim against or Interest in the Debtor may, on account of such Claim or Interest, seek or receive any payment or other distribution from, or seek recourse against, the Reorganized Debtor or the Disbursement Account or the property or any assets maintained in the Disbursement Account, or previously distributed or to be distributed on account of any Allowed Claim except as provided herein.

### Section 11.13. Injunction

(a) Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold, may hold, or allege that they hold, a Claim, Interest or other debt or liability that is discharged pursuant to Section 11.12 of the Plan, subject to an affirmative election to grant releases pursuant to Section 11.10 of the Plan, or is subject to exculpation pursuant to Section 11.14 of the Plan are permanently enjoined from taking any of the following actions against the Debtor, the Reorganized Debtor or their property on account of any such discharged, released or exculpated Claims, debts, or liabilities or any Released or terminated Interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Debtor, the Reorganized Debtor or its property; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a right of setoff, recoupment or subrogation of any kind against any debt, liability, or obligation due to the Debtor or the Reorganized Debtor, unless such Holder has Filed a motion requesting the right to perform such setoff, subrogation, or recoupment on or before 180 days after the Effective Date, and notwithstanding an indication in a Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff, subrogation, or recoupment pursuant to Bankruptcy Code section 553 or otherwise; or (v) commencing or continuing any action, in each such case in any manner, in any place, or against any Person that does not comply with or is inconsistent with the provisions of the Plan.

(b) Without limiting the effect of the foregoing provisions of this Section 11.13 upon any Person, by accepting Distributions pursuant to the Plan, each Holder of an Allowed Claim or Interest receiving a Distribution pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in this Section 11.13.

(c) Nothing in this Section 11.13 shall impair (i) the rights of any Holder of a Disputed Claim to establish its Claim in response to an objection Filed by the Debtor or the Reorganized Debtor, (ii) the rights of any defendant in an Avoidance Action Filed by the Debtor to assert defenses in such action, (iii) the rights of any party to an Executory Contract or Unexpired Lease that has been assumed by the Debtor pursuant to an order of the Bankruptcy Court or the provisions of the Plan to enforce such assumed contract or lease, (iv) or the rights of Aurora against the Debtor with respect to the Aurora Litigation; (v) the rights of SLS (or an Affiliate) under the SLS APA, the SLS Escrow Agreement, the Indemnity Agreement, and related documents to the extent expressly preserved in Section 5.08 hereof, or (v) the rights of XL Specialty Insurance Company under the XL Policy with respect to the Aurora Litigation, and nothing herein shall modify the rights and obligations of XL Specialty and the insureds under the XL Policy, all of which are reserved above in Section 3.04(b).

17.     Cancellation of Equity Interests. On the Effective Date, all instruments evidencing or giving rise to any indebtedness or obligation of the Debtor, except such instruments that are authorized or issued under this Plan, shall be canceled and extinguished. Additionally, as of the Effective Date, all Equity Interests, and any and all warrants, options, rights, or interests with respect to Interests that have been issued, could be issued, or that have been authorized to be issued but that have not been issued, shall be deemed canceled and extinguished without any further action of any party.

18.     Continuation of Automatic Stay: Except as otherwise expressly provided in the Plan, this Confirmation Order, or a separate Order of this Court, all injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the occurrence of the Effective Date.

19.     Exculpation, Releases and Injunction. The exculpation, release and injunction provisions contained in Articles XI of the Plan are appropriate under Bankruptcy Code section

1123(b), are approved and incorporated by reference herein, and shall be effective in accordance with their terms.

20.    <u>Exemption from Certain Transfer Taxes.</u> In accordance with Bankruptcy Code section 1146(a), neither (i) the issuance, transfer or exchange of a security, nor (ii) the delivery of an instrument or transfer under the Plan shall be taxed under any law imposing a stamp or similar tax. All governmental officials and agents shall forego the assessment and collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without payment of such tax or other governmental assessment.

21.    <u>Executory Contracts and Unexpired Leases.</u> The rejection of executory contracts and unexpired leases as set forth in the Plan is approved. No interest of the Debtor in any policy of insurance, however, is rejected, per the provisions of the Plan. If the rejection of an executory contract or unexpired lease results in damages to the other party or parties to such contract or lease, any Claim for such damages, if not heretofore evidenced by a Proof of Claim that has been Filed, shall be forever barred and shall not be enforceable against the Debtor, or the Reorganized Debtor, or their properties (including the Disbursement Account), successors or assigns, unless a Proof of Claim is Filed and served upon (i) the Reorganized Debtor, and (ii) any counsel for the Reorganized Debtor, on or before thirty (30) days after the later to occur of (i) the Effective Date; and (ii) the date of entry of an order by the Bankruptcy Court authorizing rejection of a particular executory contract or unexpired lease.

22.    <u>Provisions related to Federal and State Taxing Authorities.</u> Nothing in the Plan or Confirmation Order shall abrogate any obligation of the Debtor or the Reorganized Debtor to file any tax return due to any federal or state taxing authority. Any rights of set off held against the

Debtor or Reorganized Debtor, as applicable, by any federal or state taxing authority are preserved, notwithstanding any other provisions of the Plan or Confirmation Order. No section of the Plan shall be construed to create a right of setoff that does not otherwise exist under applicable state or federal law. Upon the failure of the Debtor or Reorganized Debtor to make any payment due on an Allowed Priority Tax Claim that is not cured within 30 days of the mailing of a written notice of default by the Holder of such Allowed Priority Tax Claim, such Holder may exercise all rights and remedies available under non-bankruptcy law for the collection against the Debtor or Reorganized Debtor, as applicable, of its Allowed Priority Tax Claim and/or seek relief from the Bankruptcy Court.

23.     Inconsistency. In the event of any inconsistency between the Plan and this Order, this Order shall govern.

24.     Retention of Jurisdiction. The Court shall retain jurisdiction as provided in Article XI, Section 11.04 of the Plan.

25.     Modification of the Plan. The Plan may be modified in accordance with section Article XI, Section 11.04 of the Plan.

26.     Notice of Effective Date. As soon as reasonably practicable, but in no event later than ten (10) days after the Effective Date, the Reorganized Debtor shall serve a notice of Effective Date on all holders of Claims and Interests and other parties in interest in the Chapter 11 Case. Any request for allowance of any Administrative Claim, including, without limitation, Professional Fee Claims, and Administrative Claims accruing between the Petition Date and the Effective Date, shall be Filed no later than forty-five (45) days after the Effective Date.

27.    <u>Effectiveness of Order:</u> Notwithstanding Bankruptcy Rules 6004(h), 7062, or 9014, the terms and conditions of this Order shall be immediately effective and enforceable upon the entry of this Order.

Dated: December 17, 2015
       Wilmington, Delaware

HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE
